<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **MARK MAGI,** *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> **WILLIAM RICH,** *et al.*, <br><br> Defendants. | Civil Action No. 20-8881 (ZNQ) (RLS) <br><br> **OPINION** |

<u>**QURAISHI, District Judge**</u>

This matter comes before the Court upon Motions to Dismiss filed by Third-Party Defendants Sea Insure Agency ("SIA"), (ECF No. 44), and Markel American Insurance Company ("Markel") (ECF No. 51). Alongside the Motions, Third-Party Defendants submitted separate Memoranda in support. ("SIA Br.," ECF No. 44-2; "Markel Br.," ECF No. 51-1.)

Additionally, before the Court is Defendant, Third-Party Plaintiff William Rich's ("Rich") Cross-Motion for Leave to Amend the Complaint, ("Cross Mot.," ECF No. 47), which was filed as part of the Opposition to SIA's Motion to Dismiss. As part of the Cross-Motion, Rich submitted a Proposed Second Amended Third-Party Complaint. ("PSATPC", ECF No. 47-3). Both Third-Party Defendants filed Oppositions to the Cross-Motion. ("SIA Opp'n Br. to Cross Mot.," ECF No. 52); ("Markel Opp'n Br. to Cross Mot.," ECF No. 53).

Separately, Rich filed an Opposition to Markel's Motion to Dismiss, ("Opp'n Br.," ECF No. 57), and Markel filed a Reply ("Reply Br.," ECF No. 59).

The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the following reasons, Rich's Cross-Motion for Leave to Amend will be GRANTED, and Third-Party Defendants' Motions to Dismiss will be GRANTED IN PART and DENIED IN PART.

I. **BACKGROUND AND PROCEDURAL HISTORY**

Mark Magi ("Magi") and Marie Magi (collectively referred to as "the Magis") are married residents of New Jersey. (Magis Compl. ¶ 1.) Rich is also a resident of New Jersey. (Magis Compl. ¶ 2.) United Property & Casualty Insurance Company ("UPC") is a licensed insurance provider in New Jersey, with its principal place of business in Florida. (Rich Compl. ¶ 1–2.) Government Employees Insurance Company ("GEICO") is a corporation with its principal place of business in Maryland, and or in the District of Columbia. (Magis Compl. ¶ 2; UPC Compl. ¶ 5.) Markel is a licensed insurance provider in New Jersey, with its principal place of business in Virginia. (Rich Compl. ¶ 8–9.) SIA is an insurance agent for MAIC and has its principal place of business in Connecticut. (Rich Compl. ¶ 4–6.)

The Magis filed their initial Complaint alleging three causes of action against GEICO and Rich. (ECF No. 1.) The Court entered a Scheduling Order, *inter alia*, that set a deadline of May 31, 2021, for the parties to amend the complaint and any third-party complaint. (ECF No. 13.) Rich filed a third-party complaint against Markel, SIA, and UPC. (ECF No 20.) Shortly thereafter, Rich filed an amended third-party complaint. ("ATPC.," ECF No 30.)

On June 9, 2021, the Court conducted a telephone status conference, and the case management deadlines outlined in the previously issued Scheduling Order were provisionally extended by 45 days, changing the deadline to seek leave to amend the Complaint from May 31, 2021, to July 15, 2021. (ECF No. 37).

On December 14, 2022, the parties appeared before the Court for an initial scheduling conference, and the Court entered another Scheduling Order that, *inter alia*, set a deadline of February 17, 2023, for the parties to amend the complaint and any third-party complaint. (ECF No. 78.)

### A. The Magis' Complaint

Magi is a recreational boater who owns and operates a twenty-one-foot Aquasport center console, also referred to as the Magi Vessel. (Magis Compl. ¶ 6.) Rich owns and operates a thirty-six-foot triple-engine Contender Center Console, also referred to as the Rich Vessel. (*Id*. ¶ 10.) On November 3, 2019, Magi was fishing on the Magi Vessel, roughly 3 miles east of Barnegat Inlet. (*Id*. ¶ 14–15). While Magi was fishing, the Rich Vessel was traveling at full plane speed when it struck the port side of the stationary Magi Vessel. (*Id*. ¶ 17.) Magi was thrown about the boat and subsequently injured. (*Id*. ¶ 18.)

At the time of the accident, the Magi Vessel was covered by GEICO boater insurance, which included an uninsured boater and underinsured boater endorsement up to $500,000.000, (*Id*. ¶ 8.) The Magis also allege that the Rich Vessel was uninsured. (*Id*. ¶ 11.)

### B. Rich's Proposed Second Amended Third-Party Complaint (PSATPC)[1]

The Magi Vessel and the Rich Vessel collided on November 3, 2019. (PSATPC ¶ 14.) On August 19, 2019, Sea Insure sent a yacht insurance application to Rich. (*Id*. ¶ 8; Ex. B.[2]) Rich alleges that he timely provided all requested information and performed all conditions precedent

---

[1] For the reasons set forth below, the Court accepts Rich's Proposed Second Amended Third-Party Complaint. Accordingly, the Court considers the relevant facts from that pleading.
[2] Rich's Exhibits A, B, and C, which are referenced and relied upon in the PSATPC were not filed with the PSATPC. Exhibits A, B, and C were, however, filed with Rich's initial third party complaint (ECF No. 20) and the ATPC (ECF No. 30). A court may consider certain narrowly defined types of material, including "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (internal citation omitted). Thus, to establish an accurate record, the Court incorporates Exhibits A, B, and C into Rich's PSATPC.

required by SIA to bind insurance through Markel. (PSATPC ¶ 35.) However, SIA allegedly did not timely obtain the policy through Markel, thereby leaving Rich uninsured. (*Id.*) In the alternative, Rich also alleges that SIA failed to properly advise him of any remaining conditions to be met for coverage to be bound with Markel. (*Id.*)

## II.     LEGAL STANDARD

### A.     Motions to Amend under Rule 15

Federal Rule of Civil Procedure 15 governs amendments to pleadings. The Rule states, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). In pertinent part, it provides that "leave shall be freely given" to plaintiffs seeking to amend their complaints. *Id*. The Third Circuit has encouraged courts to show "a strong liberality . . . in allowing amendments under Rule 15(a)." *Heyl & Patterson Int'l, Inc. v. F.D. Rich Housing*, 663 F.2d 419, 425 (3d Cir. 1981). However, a court may exercise its discretion to deny a motion for leave to amend when "(1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." *United States ex rel. Customs Fraud Investigations, LLC v. Victaulic Co.*, 839 F.3d 242, 249 (3d Cir. 2016).

### B.     Motions to Dismiss under Rule 12

A complaint may be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. When considering a motion under 12(b)(6), a district court must accept as true the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). A court is, however, permitted to ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citation omitted). Ultimately, a court must determine whether "the facts

alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief." *Fowler*, 578 F.3d at 211.  A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 210.

### III. DISCUSSION

#### A. JURISDICTION

The Court has original jurisdiction over this case under 28 U.S.C. § 1331(1) based on the maritime claims asserted in the Complaint.[3]  It exercises supplemental jurisdiction over the parties' related, non-maritime claims under 28 U.S.C. § 1367.

#### B. RICH'S MOTION TO AMEND THE THIRD-PARTY COMPLAINT

In his cross-motion, Rich seeks leave to file a Second Amended Third-Party Complaint. His Cross-Moving brief argues that, in general, motions to amend are liberally granted under Rule 15.[4]  (ECF No. 47-1 at 7.)  He acknowledges that a deadline to amend pleadings had passed, but he contends that the deadline should not apply to his cross-motion because the scheduling order that set the deadline was entered before he appeared in this matter.  (*Id*. at 7–8.)  He contends that even if the deadline is applied to his Motion, the Court should apply the "good cause" standard under Rule 16 because discovery in this matter is ongoing.  *Id*.

In opposition to the Cross-Motion, Markel argues that the Cross-Motion does not satisfy the good cause required by Rule 16 and Rich's new proposed complaint is futile.  (Markel Opp'n Br. to Cross Mot. at 6.)  SIA's separate opposition also contends that the proposed complaint is

---

[3] In addition to its proper citation to 28 U.S.C. § 1331(1) as a basis for jurisdiction, the Complaint also cites "48 U.S.C. § 30104. *et seq*."  (ECF No. 1 at 2.)  This is clearly an inadvertent error, given that Title 48 of the U.S. Code refers to Territories and Insular Possessions of the United States, and Title 48 contains only 2004 sections.  The Court infers that Plaintiffs intended to cite to 46 U.S.C. § 30104.  That section, however, addresses suits brought by a seaman against an employer.  The Complaint fails to plead seaman status for Mark Magi or plead any of the defendants as an employer.  Accordingly, the Court rejects that basis for subject matter jurisdiction.

[4] Rich also argues that the additional showing of good cause under Rule 16 should not apply to the cross-motion because he joined the case later, and fact discovery was still ongoing as of the filing of the cross-motion.  (ECF No. 47-1 at 7.)  The Court sets aside this argument as moot giving its conclusion that his Motion was timely.

5

futile. (SIA Opp'n Br. to Cross Mot. at 6.) Notably, neither of the defendants argue the other factors under Rule 15: delay, bad faith, dilatory motives, or prejudice. (*See* Markel Opp'n Br. to Cross Mot.; SIA Opp'n Br. to Cross Mot.)

The question of whether Rule 16 should be applied to the Cross-Motion has been mooted by the Court's recent amendment to the schedule for this matter that extended the deadline for the parties to seek leave to amend their pleadings to February 17, 2023. (ECF No. 78 at 1.) Insofar as the Cross-Motion was timely filed, Rule 15 applies. Here, the parties dispute only the futility of the Proposed Second Amended Third-Party Complaint. Given the parallels between a futility analysis under Rule 15 and a dismissal analysis under Rule 12, the Court will exercise its discretion to GRANT the Cross-Motion, and to permit Rich to file his Second Amended Third-Party Complaint. In the meantime, the Court will apply the pending Motions to Dismiss against the claims as pled in Rich's Proposed Second Amended Third-Party Complaint.

The PSATPC asserts one breach of contract claim against UPC (Count I), two claims against MAIC: breach of contract (Count II) and equitable estoppel (Count V), and five claims against SIA: Breach of Contract (Count III); Negligence (Count IV); Estoppel (Count V); Professional Malpractice (Count VI); and Fraud (Count VII). (*See generally,* PSATPC.)

### C.   Markel's Motion to Dismiss

#### 1.   Breach of Contract Claim (Count II)

Count II of the PSATPC alleges a breach of contract claim against Markel. (*Id.* ¶¶ 25–32.) To establish a *prima facie* claim for breach of contract, a plaintiff must show "(1) a contract [existed] between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007).

6

Markel argues that the Court need not look further than the first element enumerated in *Frederico* to determine that Rich has not sufficiently pled a claim against Markel. Elsewhere in his pleading, Rich himself alleges that the insurance policy he attempts to enforce took effect on November 7, 2019. (PSATPC ¶ 46.) The incident for which Rich seeks coverage occurred on November 3, 2017—four days before the policy went into effect. (*Id.*) In the Motion to Dismiss, Markel argues that Rich's claim for breach of contract fails as a matter of law because there was no insurance policy in effect at the time of the incident and the policy itself does not provide insurance coverage for a loss that occurred prior to its inception. (Markel Br. at 8–10.)

The Court agrees, and finds that, as pled, a contract did not exist between Rich and Markel at the time the relevant incident took place. *Frederico,* 507 F.3d at 203. Moreover, the policy's terms do not provide coverage prior to its effective date. Accordingly, Count II of the PSATPC will be dismissed without prejudice.

### 2. Equitable Estoppel (Count V)

Count V of the PSATPC alleges an equitable estoppel claim against SIA "and/or" Markel. (PSATPC ¶¶ 43–47.) Equitable estoppel requires (1) "a misrepresentation as to the fact or extent of coverage, innocent or otherwise, by the insurer or its agent, and (2) reasonable reliance by the insured thereon to his ultimate detriment." *Martinez v. John Hancock Mutual Life Ins. Co.*, 145 N.J. Super. 301, 313–14 (App. Div. 1976).

Specifically, Rich alleges that SIA "was the agent and/or broker for [Markel]" (*id.* ¶ 44), SIA represented "that all of the information that Mr. Rich had provided to secure insurance was acceptable, and that the only missing and/or needed information was the engine serial numbers" which Rich subsequently provided, and Rich thereafter detrimentally relied on SIA's representations that they would obtain a policy of insurance for him (*id.* ¶ 45). Ultimately, Rich

alleges that Markel is "estopped from asserting that William Rich did not timely meet all obligations required of it to bind insurance and [is] estopped from denying that William Rich is insured." (*Id.* ¶ 47.)

In essence, Rich's equitable estoppel claim against Markel seeks to bind it based on SIA's alleged misrepresentations on behalf of Markel as its agent. The question is therefore one of agency. New Jersey recognizes that not every agent's fault is attributable to its principal. *See JMB Enter. v. Atlantic Employers Ins. Co.*, 550 A.2d 764, 767 (App. Div. 1988). Generally, an employee agent's fault will be imputed to its principal based on *respondeat superior* theories. *See id*. "By contrast, the actions of a non-employee agent 'are not equatable with the actions of the principal in all circumstances and for all purposes as is ordinarily the case when the agent is a servant.'" *Countryside Oil Co. v. Travelers Ins. Co.*, 928 F. Supp. 474, 483 (D.N.J. 1995) (quoting *JMB Enter.*, 550 A.2d at 764).

In relevant part, Rich alleges that SIA is "a for profit corporation with its principal place of business in Westbrook, Connecticut" (PSATPC ¶ 5) that "is an insurance agent for [Markel]" (*Id.* ¶ 7). He alleges later in his Complaint, somewhat inconsistently, that SIA "was the agent and/or broker for [Markel]." (*Id.* ¶ 44). Even reading these allegations in their most favorable light, the Court cannot interpret them as asserting that SIA is Markel's employee-agent. Accordingly, Rich has not sufficiently pled a basis to conclude that Markel is responsible under *respondeat superior* theories. *Countryside*, 928 F. Supp. at 482.

Whether Markel may be held responsible for SIA's actions as a non-employee agent/broker is a more nuanced question, likely requiring examination of any representation agreement between Markel and SIA to assess the scope of SIA's actual authority, as well as consideration of any facts tending to prove or disprove that SIA was vested with apparent authority. *See Countryside*, 928

F. Supp. at 484–85. At this stage, the Court finds that Rich has plausibly pled this aspect of his estoppel claim with respect to Markel.

To challenge the sufficiency of Rich's estoppel claim, Markel also cites to the SIA insurance application attached to the Complaint, which states at the top of the first page as follows:

> BINDING: This is an application for insurance. You must submit a fully completed application and premium to our office in order for coverage to be considered.

("Yacht Insurance Application", attached as Exhibit B to the Third Party Complaint, ECF No. 30-2). Markel argues that this undercuts both elements of the Rich's estoppel claim because (1) it contradicts SIA's purported misrepresentation, and (2) it undercuts the reasonableness of Rich's reliance, given that he was notified in writing[5] that a premium was required for coverage to be considered and he never alleges that he paid an insurance premium for the earlier coverage he seeks.

Viewing the Third Party Complaint in a light most favorable to Rich, the Court agrees that the notice on the insurance application militates against both elements of Rich's estoppel claim, but it finds that the notice does not dispel either of the allegations entirely.[6] In other words, notwithstanding the notice, it is plausible, as Rich pleads, that SIA's alleged statement misled him into believing that coverage would go into effect when he supplied the engine serial numbers and that he reasonably relied on this statement to his detriment. Accordingly, the Court will DENY the portion of Markel's Motion seeking to dismiss Rich's estoppel claim against it (Count V).[7]

---

[5] Markel characterizes this notice as presented "prominently in bold letters at the top of the page." (Markel Moving Br. at 13.) Having reviewed the Yacht Insurance Application, the Court agrees that the notice is placed at the top of the page, but finds that it was neither prominent nor in bold typeface.

[6] At this stage of the litigation, the Court will not look outside the parties' pleadings for context. However, the Court does acknowledge that Markel's Moving Brief notes that Rich reported to the police at the time of the incident that he knew he was uninsured, "as evidenced by the police report." (Markel Moving Br. at 1.)

[7] Markel separately argues that Rich's estoppel claim requires him to plead to the heightened standard required under Rule 9 because it implicates a misrepresentation which sounds in fraud. Because the Court construes the misrepresentation made in Count V to sound in negligence rather than fraud, the Court rejects Markel's position.

D.     SIA's Motions to Dismiss

1.     **Breach of Contract (Count III)**

The Breach of Contract claim against SIA (Count III) in the PSATPC is nearly identical to the Breach of Contract Claim asserted in the Amended TPC.  However, the Court does not reach the breach of contract issue because under New Jersey law, a claim against insurance agents or brokers for failing to obtain the proper insurance is not recognized as a claim for breach of contract but rather for negligence.  *Minnesota Life Ins. Co. v. Cooke*, Civ. No. 20-14326, 2021 WL 5122070, at *5 (D.N.J. Nov. 4, 2021).  "Although the relationship of broker to insured may be described as contractual, our cases have recognized that the insured 'does not sue on a contract of insurance.'  The claim asserted is based on the broker's negligent failure to procure the appropriate coverage." *Carter Lincoln-Mercury, Inc., Leasing Div. v. EMAR Grp., Inc.*, 135 N.J. 182, 190 (1994) (citing *Rider v. Lynch*, 42 N.J. 465, 477, 201 A.2d 561 (1964)); *see also Highlands Ins, Co, v. Hobbs Group, LLC*, 373 F.3d 347, 352 (3d Cir. 2004) (noting that *Carter Lincoln-Mercury* "emphasizes that although the relationship between an insured and its broker is most often contractual in nature, claims by an insured against its broker are not based on a privity relationship but are premised on the tort concept of negligence in failing to procure the appropriate coverage."); *accord Luzzi v. Hub Int'l Northeast, Ltd.*, Civ. No. 15-6064, 2018 WL 3993450, at *7 (D.N.J. Aug. 21, 2018) (granting defendants' summary judgment because "New Jersey does not recognize a breach of contract claim in connection with the procurement of insurance."); *Call v. Czaplicki*, Civ. No. 09-6561, 2010 WL 3724275, at *11 (D.N.J. Sept. 16, 2010) (dismissing breach of contract claim noting that "it is well-settled that New Jersey does not recognize a breach of contract claim for the negligent procurement of life insurance."); *Pro Century Ins. Co. v. Harbor House Club Condo. Ass'n, Inc.*, 652 F. Supp. 2d 552, 560 (D.N.J. 2009) (explaining and applying negligence

standard set forth in Carter Lincoln-Mercury). Accordingly, Rich's breach of contract claim against SIA will be dismissed with prejudice.

### 2. Equitable Estoppel (Count V)

Count V of the PSATPC also alleges a claim for equitable estoppel against SIA. The critical difference between the Amended TPC and the PSATPC as it pertains to SIA, is that Rich alleges with specificity that SIA promised to insure him so long as he complied with all of the prerequisites and conditions precedent to be covered by a policy of insurance with Markel. (PSATPC ¶¶ 29, 45.) Further, he pleads that upon learning on September 11, 2021 that the engine serial numbers were needed to complete the application, Rich promptly provided the outstanding information to Sea Insure on September 12, 2019. (*Id.* ¶ 45.) SIA argues that Rich never alleges that, "Sea Insure affirmatively stated that coverage had been placed at any time prior to the Underlying Boating Incident so as to mislead Rich as to the existence of insurance coverage." (SIA Opp'n to Cross Mot. 7.)

Construing the PSATPC in the light most favorable to Rich, he has sufficiently stated a claim for equitable estoppel against SIA. With respect to the first prong Rich complied with all of SIA's requests and was under the impression that he was insured. (PSATPC ¶ 45) Rich further alleges that he "relied upon the representations of [SIA] to his detriment" by allegedly driving his yacht while uninsured. (*Id.*) Accordingly, Rich has sufficiently stated a claim for equitable estoppel against SIA.

### 3. Professional Malpractice (Count VI)

Count VI of the PSATPC alleges a professional malpractice claim against SIA. (PSATPC ¶¶ 48–55.) Specifically, Rich alleges that SIA owed him a fiduciary duty "to provide services within the standards accepted by insurance agents/brokers" (*id.* ¶ 51), and that SIA "provided

11

services to [him] that fell below accepted standards" (*id.* ¶ 52). In the First Amended Third-Party Complaint, Rich asserted a claim against SIA for professional negligence in Count IV, followed by a purported standalone cause of action against Sea Insure for Breach of Fiduciary Obligation in Count VI. ("Am. TPC" ¶¶ 38–41, 47–50, ECF No. 30.) SIA moved to dismiss the claim for the breach of fiduciary obligation because it is encompassed within the negligence cause of action and is not recognized as a standalone claim under New Jersey law.

Now, in the PSATPC, Rich includes the breach of fiduciary obligation claim within the professional malpractice count. (PSATPC ¶¶ 48–55.) SIA therefore argues that Rich's professional malpractice claim in the PSATPC "should be denied as futile because that count is duplicative of the existing professional negligence claim against Sea Insure." (SIA Opp'n Br. to Cross Mot. at 8.)

It is well established that "[i]nsurance brokers stand in a fiduciary capacity with their clients, to whom they owe a duty to exercise reasonable skill and good faith." *Harbor Commuter Serv., Inc. v. Frenkel & Co.*, 401 N.J. Super. 354, 367 (App. Div. 2008) (citing *Aden v. Fortsh*, 169 N.J. 64, 78–79 (2001)). Accordingly, an insurance broker who agrees to procure a specific insurance policy for another but fails to do so may be liable for damages resulting from such negligence. *Aden*, 169 N.J. at 79. Liability resulting from the negligent procurement of insurance is premised on the theory that a broker "ordinarily invites [clients] to rely upon his expertise in procuring insurance that best suits their requirements." *Id*. "The concept is essentially one of professional malpractice." *Id*. A broker engaged to obtain insurance must exercise reasonable skill and "is expected to possess reasonable knowledge of the types of policies, their different terms, and the coverage available in the area in which his principal seeks to be protected." *Id*. Furthermore, if a broker "neglects to procure the insurance or if the policy is void or materially

deficient or does not provide the coverage he undertook to supply, because of his failure to exercise the requisite skill or diligence, he becomes liable to his principal for the loss sustained thereby." *Id*. (citing Restatement (Second) of Agency, § 401 (1957) ("An agent is subject to liability for loss caused to the principal by any breach of duty.")).

Although Rich may have a professional malpractice claim, he has not sufficiently pled it in his PSATPC. Rich makes the claim that SIA breached its fiduciary duty "by failing to properly advise William Rich, failing to communicate with him, failing to bill him, and failing to bind coverage in a timely manner." (PSATPC ¶ 55.) Rich also makes the legal conclusion that this conduct amounted to professional liability which caused him harm. These are the legal conclusions that merely state "the-defendant-unlawfully-harmed-me" of which *Iqbal* warns. 556 U.S. at 678. Moreover, these allegations alone are insufficient to state a claim for professional malpractice against insurance brokers. The New Jersey Supreme Court noted that insurance agents breach their fiduciary duty if that broker "neglects to procure the insurance or if the policy is void or materially deficient or does not provide the coverage he undertook to supply, because of his failure to exercise the requisite skill or diligence, he becomes liable to his principal for the loss sustained thereby." *Aden*, 169 N.J. at 79. Rich does not allege that SIA breached any of the aforementioned duties. In fact, Rich even acknowledges that SIA *did* issue Rich an effective insurance policy that took effect only four days after the accident that gave rise to this case. (PSATPC ¶ 46) (emphasis added). Without any further allegations of SIA's misconduct beyond a four-day difference between the accident and the insurance policy taking effect, Rich fails to state a claim for professional malpractice. Accordingly, Count VI of the PSATPC will be dismissed without prejudice.

### 4. Fraud (Count VII)

Finally, Rich alleges a claim of fraud against SIA. (PSATPC ¶ 62.) To state a claim for common law fraud in New Jersey, a plaintiff must sufficiently allege the following five elements: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages. *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610, 691 A.2d 350 (1997); *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1182 (3d Cir. 1993).

Moreover, "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). Rule 9(b) does not require a plaintiff claiming fraud to plead the date, place or time of the fraud so long as they use "alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 658 (3d Cir. 1998). However, "a plaintiff may not rely merely on "conclusory statements." *Mardini v. Viking Freight, Inc.*, 92 F. Supp. 2d 378, 385 (D.N.J. 1999). The plaintiff must indicate at the very least who made the material representation giving rise to the claim and what specific representations were made. *Id*.

In the PSATPC, Rich pleads that he spoke to Duncan Brown ("Brown"), a representative of Sea Insure on or after the date of the accident, and Brown realized that Rich had met all the conditions precedent to bind coverage with Markel. (PSATPC ¶ 60.) Rich further pleads that Brown attempted to conceal the failure to perform by claiming to Markel that Rich failed to meet all the conditions to be insured. *Id*. However, the PSATPC does not sufficiently plead knowledge or belief by Brown of the statement's falsity; an intention that Rich relies on it; or reasonable reliance thereon by Rich. Although Rich now identifies Brown as the individual who made such

14

representations to him, the PSATPC still falls short of the standard outlined in Rule 9(b), and thus fails to state a claim for fraud. Accordingly, Count VII of the PSATPC will be dismissed without prejudice.

### IV. CONCLUSION

For the foregoing reasons, Third-Party Plaintiff William Rich's Cross-Motion for Leave to Amend the Complaint will be GRANTED.

The Motion to Dismiss filed by SIA will be **GRANTED IN PART and DENIED IN PART.** The Motion will be GRANTED as to Rich's claim for breach of contract against SIA (Count III), and that claim will be DISMISSED WITH PREJUDICE. It will also be GRANTED as to Rich's claim for professional malpractice against SIA (Count VI) and claim for fraud against SIA (Count VII). Those claims will be DISMISSED WITHOUT PREJUDICE. Finally, the Motion will be DENIED as to Rich's claim for equitable estoppel against SIA (Count V).

The Motion to Dismiss filed by Markel American Insurance will also be **GRANTED IN PART and DENIED IN PART.** The Motion will be GRANTED as to Rich's claim for breach of contract against Markel (Count II) and that claim will be DISMISSED WITHOUT PREJUDICE. The Motion will be DENIED as to Rich's claim for estoppel against Markel (Count V). The Court will provide Rich with one final opportunity to amend his complaint to address the deficiencies in his pleading identified herein. Rich is cautioned that failure to remedy the deficiencies in the next pleading may result in the dismissal of the relevant claims with prejudice. An appropriate Order accompanies this Opinion.

Date: **January 31, 2023**

                                           s/ Zahid N. Quraishi
                                           **ZAHID N. QURAISHI**
                                           **UNITED STATES DISTRICT JUDGE**