**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**MARK MAGI,** *et al.*,

            Plaintiffs,

            v.

**WILLIAM RICH,** *et al.*,

            Defendants.

Civil Action No. 20-8881 (ZNQ) (JBD)

**OPINION**

**QURAISHI, District Judge**

    **THIS MATTER** comes before the Court upon a partial Motion to Dismiss Count II of the Third Amended Third-Party Complaint ("TATPC") filed by Third-Party Defendant Markel American Insurance Company ("Markel") (the "Motion"). (ECF No. 111.) Markel filed a brief in support of the Motion ("Moving Br.", ECF No. 111-1) with a police report as Exhibit A in support of the Moving Br. (ECF No. 111-2.) Defendant, Third-Party Plaintiff William Rich ("Rich") opposed the Motion ("Opp'n Br.", ECF No. 118) and submitted a string of exhibits in opposition to the Motion. (ECF Nos. 118-1–118-12.) Markel filed a reply brief in further support of the Motion. ("Reply Br.," ECF No. 125.)

    The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1. For the reasons set forth below, Markel's partial Motion to Dismiss will be GRANTED.

1

I.    **BACKGROUND AND PROCEDURAL HISTORY**

Defendant Rich is being sued based on his involvement in a boating accident that occurred on November 3, 2019. (See Compl., ECF No. 1.) Rich has sought to pursue third-party claims against various parties, including his insurance company, Markel. On January 31, 2023, the Court granted Markel's Motion to Dismiss Count II—Rich's breach of contract claim against Markel—ruling that the Complaint did not plausibly plead that a valid contract existed between Rich and Markel at the time the boating accident occurred on November 3, 2017. (ECF Nos. 79 & 80.) The Court determined that, as pled, the policy at the center of the lawsuit did not provide coverage prior to the effective date listed on its face: November 7, 2017. (ECF No. 79.) Accordingly, the Court dismissed Count II of Rich's Second Amended Third-Party Complaint ("SATPC") and granted Rich leave to either file a final Third-Party Complaint or continue to pursue his remaining claims from the SATPC.

By the Court's deadline, Rich elected to further amend his Complaint and filed his TATPC.[1] (ECF No. 81.) The TATPC again asserts a breach of contract claim against Markel notwithstanding the undisputed fact that the underlying accident occurred after the effective date identified on the face of the Policy. The current Motion seeks to again dismiss that claim.

II.   **LEGAL STANDARD**

A complaint may be dismissed under the Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. When considering a motion to dismiss

---

[1] Notwithstanding the Court's clear instruction to Rich to either file a final Amended Third Party Complaint *or* stand on his Second Amended Third Party Complaint, he filed a new Amended Third Party Complaint but captioned it as his Second Amended Third Party Complaint. (ECF No. 81.) This is incorrect. It's clear from the docket that Rich has already filed an initial Third Party Complaint (ECF No. 20), a First Amended Third Party Complaint (ECF No. 30), and a Second Amended Third Party Complaint (ECF No. 47), which was accepted by the Court (ECF No. 79). Accordingly, the operative pleading now before the Court is Rich's fourth Complaint and is properly designated his *Third* Amended Third Party Complaint. The Clerk's Office will be instructed to update the description of docket entry number 81 accordingly.

under FRCP 12(b)(6), a district court must accept as true the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside,* 578 F. 3d 203, 210 (3d Cir. 2009) (citation omitted). A court, however, may ignore legal conclusions or factually unsupported accusations that merely state, "the defendant unlawfully harmed me." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). In the end, a court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678).

A district court is not "compelled to accept unsupported conclusions and unwarranted inferences," *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quoting *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir.1997)), or "a legal conclusion couched as a factual allegation," when analyzing a motion to dismiss. *Id.* (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Angelastro v. Prudential-Bache Sec., Inc.*, 764 F.2d 939, 944 (3d Cir. 1985)). Thus, "courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of Am.*, 361 F.3d 217, 222 (3d Cir. 2004) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426.))

## III. <u>JURISDICTION</u>

The Court has original jurisdiction over this case under 28 U.S.C. § 1331(1) based on the maritime claims asserted in the TATPC.  The Court exercises supplemental jurisdiction over the parties' related, non-maritime claims under 28 U.S.C. § 1367.

## IV. <u>DISCUSSION</u>

Count II of the TATPC again alleges a breach of contract claim against Markel. (ECF No. 81 ¶¶ 53–61.)  In relevant part, this newest version of Count II recites:

> 53. Third Party Plaintiff William Rich re-alleges and reincorporate the allegations set forth in the preceding paragraphs as if fully set forth herein.
>
> 54. On September 13, 2019, Sea Insure Agency, through Duncan Brown, contacted MAIC and indicated that a policy of insurance was to be issued between MAIC and Rich, with an effective date of September 13, 2019.
>
> 55. The policy MAIC was to issue was Markel Helmsman Yacht policy MHY00000511474 to William Rich. (Exhibit C)
>
> 56. Pursuant to the terms of the above Policy, MAIC was to provide insurance coverage, including liability coverage and indemnification, attorneys fees and costs of defense, to William Rich for claims made against him for bodily injury caused by a boating accident.
>
> 57. Although notice of a claim was timely provided to MAIC, and the defense of this action tendered, MAIC has denied coverage.
>
> 58. Notwithstanding that William Rich complied with all of the prerequisites and conditions precedent to be covered by a policy of insurance with MAIC, and notwithstanding that Sea Insure Agency indicated that MAIC was to bind a policy of insurance with an effective date of September 13, 2019, MAIC is alleging that the policy did not take effect on September 13, 2019, but took effect after the accident on November 7, 2019.
>
> 59. MAIC breached the contract of insurance with William Rich that was created through its agent, Sea Insure Agency.
>
> 60. Pursuant to Fed R. Civ P. 14 and 20, Plaintiff hereby impleads MAIC as the provider of liability insurance and the commonality of interest with defendant William Rich as operator of his vessel.

> 61. Although the defendant, Third Party Plaintiff, William Rich, denies all liability, in the event that there is a verdict, judgment, settlement, or arbitration award in favor of either of the plaintiffs against William Rich, that William Rich is entitled to contribution and a judgment of full indemnity from Third Party defendant MAIC.

(TATPC ¶¶ 53–61.)

In its Motion, Markel argues that the TATPC lacks any allegation that either SIA or Markel ever represented to Rich that an insurance policy would be bound with an effective date of September 13, 2019. (Moving Br. at 10.) It argues that the TATPC concedes Rich was not even aware that SIA had communicated with maritimepg.com on September 13, 2019. (*Id*.)

Markel insists that its insurance policy was not effective until November 7, 2019, the effective date listed on the Policy and the date Rich's credit card information for payment of the insurance policy premium was provided for the first time in their email exchanges on November 7, 2019. (Moving Br. at 15; Exhibit K.)

In Opposition, Rich argues that because this is an admiralty matter, federal law is to be applied to his breach of contract claim, "with resort to state law in the absence of well-established federal admiralty rule. (Opp. at 9–10.) Under either law, Rich contends that a marine insurance contract can be binding even if the actual policy is never issued. (*Id*. at 10–11.) In such situations, the terms of the insurance policy are those contained in the standard form policy usually issued by the company at the time. (*Id*. at 11.)

Rich argues and alleges that SIA agreed to provide him with insurance, and Markel is bound by SIA's agreement because SIA is Markel's agent that was acting within the scope of SIA's apparent authority. (*Id*. at 13; TATPC ¶¶ 15, 29, 59.)[2] According to Rich, the terms of that policy

---

[2] For reasons that are not clear, Rich argues for the first time in his opposition that an "oral policy of insurance was created" because "all the material terms of the policy of insurance were agreed to between MAIC and William Rich." (Opp. at 12.) Rich cites no supporting allegations from the TATPC for the existence of an oral agreement, nor could the Court find any.

5

are the same ones that were later issued by Markel in writing, minus the effective date. (Opp. at 12; TATPC ¶ 41.) He argues, in the alternative, that an agreement to provide coverage should be found under New Jersey's "reasonable expectation" doctrine because he provided the final information sought be SIA and, although he did not pay the premium, SIA instructed him not to pay a premium, but to instead wait until he was invoiced. (Opp. at 16–21.) As evidence of the reasonableness of his own belief that coverage had gone into effect, Rich cites the email from Brown to maritimepg.com. (Opp. at 21.) If Brown, as agent for SIA, believed coverage should be issued, Rich's expectation was almost certainly reasonable. (*Id*.)

On reply, Markel maintains that the Policy had an effective date of November 7, 2019. (Reply at 4.) It distinguishes the cases relied upon by Rich for the proposition that an insurance agreement can be binding without an actual policy. (Reply at 5.) According to Markel, "SIA never actually procured a policy prior to the incident", "[n]or did it ever agree to bind the policy or tell Rich that such a policy was bound." (Reply at 8.) Even if SIA had done so, Markel denies that it is responsible for the acts or contracts made by SIA because "there is a dispute as to whether SIA is the agent of MAIC . . . [3]." (*Id*. at 7–8). Either way, Markel insists that the Policy as an oral or written contract did not exist at the time of the boating accident on November 3, 2019. Markel cites the exhibits attached to the TATPC, including the email from SIA to Rich as clearly showing that a condition for Markel to even consider a binding policy is the submission of a completed application *and* payment of the insurance premium to Markel. (*Id.* (emphasis added); Exhibit B to the SATPC.)

---

[3] The Court construes Markel's argument that there is a dispute as to whether SIA acted as Markel's agent as highlighting a *legal* dispute between the parties as to SIA's status. Were SIA's status as agent merely a factual issue, given the posture of the motion to dismiss, the Court would be bound by the factual allegations asserted by the TATPC. As set forth below, this is not the case.

To establish a *prima facie* claim for breach of contract, a plaintiff must show "(1) a contract [existed] between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007); *Goldfarb v. Solimine*, 245 N.J. 326, 338 (2021). The parties' dispute on this Motion centers, as it has previously, on the first element: whether a contract existed between the parties. The TATPC does not allege that Markel directly entered into a contract with Rich. It instead now alleges that SIA, acting as agent for Markel[4], created the contract which in turn binds Markel as principal. This implicates whether the TATPC plausibly pleads that SIA was acting as an agent for Markel.

In New Jersey, "[a]n agency relationship is created 'when one person (a principal) manifests assent to another person (an agent) that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act.'" *Verify Smart Corp. v. Bank of Am., N.A.*, Civ. No. 17-4248, 2021 WL 2549335, at *8 (D.N.J. June 17, 2021) (quoting *N.J. Lawyers' Fund for Client Protection v. Stewart Title Guar. Co.*, 203 N.J. 208, 220 (2010)). This assent is given in the form of actual authority, exhibited by a principal's words or conduct, or apparent authority, which occurs when "a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." *Id.*

Unfortunately, the TATPC's allegation that SIA is the agent of Markel is little more than a bald legal conclusion. *See Ferrante v. Amgen, Inc.*, Civ. No. 13-7344, 2014 WL 1092555, at *3

---

[4] This is giving the Third Amended Third-Party Complaint its most generous reading. It is in fact remarkably inconsistent as to the role played by SIA. At points, the TATPC does allege that SIA is the "insurance agent for MAIC" (TATPC ¶¶ 12, 29, 59, ). However, at another point it alleges that MAIC is SIA's "agents, servants or employees." At still other points, the TATPC alleges that SIA is "the agent and/or broker for MAIC." (TATPC ¶ 68). Notwithstanding this purported connection between SIA and Markel, the TATPC also separately alleges that SIA is "the insurance agent/broker for William Rich." (TATPC ¶¶ 73, 77).

7

(D.N.J. Mar. 18, 2014). As set forth above, the Court need not accept bare legal conclusions on a motion to dismiss. *See also Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007). The TATPC lacks any specificity as to whether SIA was exercising actual authority or apparent authority and is devoid of factual allegations to support either notion. In the absence of such facts, the Court cannot find that Count II states a plausible claim.[5] Accordingly, the Motion to Dismiss will be GRANTED.

The Court is aware that it has already cautioned Rich that the TATPC would be his final opportunity to plead a breach of contract claim against Markel, and that dismissal with prejudice would be warranted. However, given that the TATPC has pled a coherent, if not plausible, claim, the Court finds it would not be futile to afford Rich one additional opportunity. Accordingly, Rich will be granted leave to file a Fourth Amended Third-Party Complaint, limited to amendments to remedy the defects identified herein, within 30 days. Should a Fourth Amended Third-Party Complaint fail to state a claim, it is unlikely that further leave will be granted. Prior to filing a Fourth Amended Third-Party Complaint, the Court encourages him to revisit the entirety of his pleading to clarify the role(s) that he is alleging SIA played in the circumstances that led to this suit.

## V.  CONCLUSION

For the reasons stated above, the Court will **GRANT** Third-Party Defendant Markel American Insurance Company's Partial Motion to Dismiss Count II of the Second Amended Third-Party Complaint without prejudice. An appropriate Order will follow.

Date:  **December 26, 2023**

ZAHID N. QURAISHI
UNITED STATES DISTRICT JUDGE

---

[5] The Court does not reach Rich's argument regarding his reasonable expectation of insurance coverage because it too requires a finding that SIA was acting as Markel's agent.